UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff<br><br>          -against-<br><br>IVAN AFANASYEV,<br><br>                    Defendant. | 17 Cr. 350 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant Ivan Afanasyev's motion for compassionate release based on the COVID-19 pandemic.  (See dkt. no. 1298.)  For the reasons set out below, the motion is granted, effective upon his signing of a stipulation agreeing to an Order of Removal and waiving his rights to oppose his deportation.

    I.   Background

    Defendant was a member of the "Shulaya Enterprise," an organized crime group that operated between about 2014 and 2017.  During its existence, the Shulaya Enterprise engaged in a variety of criminal activity, including transporting and selling stolen property, running an illegal gambling parlor, extorting debtors to its gambling operations, laundering criminal proceeds, and planning to rig slot machines to defraud casinos.  (See Letter from Audrey Strauss, Oct. 7, 2020 ("Government's

Opposition"), dkt. no. 1303, 1 (citing Pre-Sentence Report ("PSR") ¶¶ 13-16).)  Mr. Afanasyev participated in the Shulaya Enterprise through his efforts to further a large-scale cargo theft ring, as well as fraud in connection with the creation of false identification documents used by his co-conspirators in a fake check cashing scheme.  (See id. (citing PSR ¶¶ 13-29).)

On February 5, 2018, Mr. Afanasyev pleaded guilty to a racketeering conspiracy based on the predicate acts noted above.  (See id. (citing PSR ¶ 8).)  On June 19, 2018, Judge Katharine B. Forrest sentenced him primarily to 42 months' imprisonment.  (See Judgment, June 25, 2018, dkt. no. 857.)

The Government concedes that Defendant has exhausted his administrative remedies.  (See Government's Opposition, dkt. no. 1303, at 1-2.)

Defendant is 62 years old.  As reflected in his medical records, attached to his request for compassionate release (Exhibit E, dkt. no. 1298), Defendant was diagnosed with lung cancer in 2010 and treated with surgery and chemotherapy.  He also suffers from diabetes type II and hyperlipidemia (high cholesterol).  (Id.)  The Government agrees that his maladies are considered by the CDC as underlying medical conditions that

increase risk for severe illness from COVID-19. (Government's Opposition, dkt. no. 1303, at 3.)

II.  Applicable Law

Although a court may not normally modify a term of imprisonment once it has been imposed, "compassionate release" is among the limited exceptions. United States v. Demaria, No. 17 CR. 569 (ER), 2020 WL 1888910, at *2-3 (S.D.N.Y. Apr. 16, 2020). Under 18 U.S.C. § 3582(c)(1)(A), a prisoner himself may move the court for compassionate release only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. 3582(c)(1)(A); Demaria, 2020 WL 1888910, at *2. A court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, No. 19-3218-CR, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020).

Where a compassionate release motion is brought by BOP, compassionate release considerations are guided by the policy statement within U.S. Sentencing Guidelines § 1B1.13. See 18 U.S.C. § 3582(c)(1)(A). The U.S. Sentencing Guidelines place

two conditions on a determination of early release: (1) there must be extraordinary and compelling reasons that warrant the reduction; and it must be (2) a situation where "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13. The Guidelines include as "extraordinary and compelling reasons" the existence of "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Id. cmt. 1(A)(ii)(I).

A court should consider the following factors in determining whether a prisoner is a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

If a court determines that extraordinary and compelling circumstances exist, and the prisoner poses no danger to the community, the court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the

factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

It is a defendant's burden to prove that "extraordinary and compelling reasons" exist; that he is not a danger to the community; and that the Section 3553(a) factors and all other relevant considerations warrant the Court exercising its discretion to grant early release. See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992).

   III. Discussion

The Government argues that, despite Defendant's conditions, his request should be denied because he poses a danger to the community. It notes that, even after he became aware that law enforcement had begun arresting his co-defendants, Mr. Afanasyev continued his identity fraud activities. (Government's Opposition, dkt. no. 1303, at 4 (citing PSR ¶¶ 18-19.) The Government points out that Defendant was directly implicated in a scheme to steal large shipments of cargo, including laptops, Pyrex cookware, chicken feed, halide lamps, and 10,000 pounds of individually wrapped peanut butter cups. (Id.) The losses associated with these shipments totaled approximately $800,000. (Id. (citing PSR ¶¶ 29-31).)

In the ordinary case, Defendant's danger to the community from continuing crime might preclude his release. Here, however, as pointed out in Defendant's reply (Letter from Tony Mirvis, Oct. 29, 2020, dkt. no. 1315 ("Defendant's Reply") at 3), defense counsel has been in touch with ICE's Criminal Alien Program to discuss Mr. Afanasyev's willingness to sign a stipulation agreeing to an Order of Removal and waiving his rights to oppose his deportation. In any event, there is currently an ICE detainer lodged against him. (Id. at 3.) Thus, upon release from his present incarceration, Mr. Afanasyev would either be released to ICE custody or deported immediately. Accordingly, the safety of the community would not be adversely affected by Defendant's release from his present incarceration.

IV. Conclusion

For the reasons set out above, Defendant Ivan Afanasyev's motion for compassionate release (dkt. no. 1298) is granted, effective upon his signing of a stipulation agreeing to an Order of Removal and waiving his rights to oppose his deportation.

**SO ORDERED.**

Dated:   New York, New York
         October 30, 2020

_____
LORETTA A. PRESKA
Senior United States District Judge